UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

IN RE:

JAMES QUEZADA and          CASE NO. 16-01467-TMD-11
SIMONA QUEZADA

    DEBTORS

JAMES QUEZADA and
SIMONA QUEZADA

    PLAINTIFFS

v.                          ADV. NO. 16-01101

UNITED STATES OF AMERICA

    DEFENDANT

## PLAINTIFFS' TRIAL BRIEF

### UNDISPUTED FACTS

1. Undisputed Fact No.2 in the Joint Pretrial Order (JPTO) states:

   During the tax periods 2005 to 2008, and as part of his normal business practices, Quezada files tax returns that included Form 1040's and Forms 1099's (Miscellaneous Income) describing payments made to subcontractors for the relevant tax periods. Quezada did not file Forms 945's during the tax periods 2005 to 2008 or any other tax years.

2. Undisputed Fact No.3 in the JPTO states:

   Deductions for subcontractor expenses were claimed by Quezada on his tax returns of 2005 - 2008. The IRS is not challenging the Form 1040's or Forms 1099-Misc. filed form tax years 2005 – 2008.

3. Undisputed Fact No.11 states:

      Assessment of the form 945 taxes and additions to tax due from Quezada for the tax years 2005, 2006, 2008, and 2008 were made on February 3, 2024 – which is more than three years after Quezada filed his Forms 1040's for the relevant tax years.

## AGREED ISSUES OF LAW

4.      Agreed Issue of Law No.2 states:

The statute of limitations for tax assessments set forth in 26 U.S. Code §6501(a) states, "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)… and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period."

5.      Agreed Issue of Law No.3 states:

The parties agree that the Beard test determines <u>both</u> whether a return is **valid** <u>and</u> when the **period of limitations** starts for a tax return. [See *Beard v. Commissioner*, 82 T.C. 777 (1984), aff'd 793 F.2d 139 (6th Cir.1986) Also *Internal Revenue Manual Section* 25.6.1.6.14.]

6.      Agreed Issue of Law No.4 states:

A tax return is considered sufficient for establishing validity and the start of the statute of limitations period if it meets the following criteria:
1. It has sufficient data to calculate a tax liability,
2. It purports to be a tax return,
3. It is an honest and reasonable attempt to satisfy the requirements of the tax law, and
4. It is signed under penalties of perjury. [See *Beard*]

7.      Agreed Issue of Law No.5 states:

The "substantial compliance" standard, derived form a line of Supreme Court cases, states that if an income tax return the "substantial compliance" standard, the return is a valid return for purposes of the statute of limitations on assessment. *Zellerbach Paper Co. v. Helvering*, 293 U.S.172, 180 (1934); *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453 (1930). 26 [sic]. See *Blount v. Commissioner*, 86 T.C. 383 (1986), acq I result,1986-2 C.B.1.

8.      Agreed Issue of Law No.6 states:

In determining whether a Form 1040 without correct attachments (for example, an attached form that contains incorrect SSN information) is a valid return, Courts can apply the "substantial compliance" standard to each case.

9. The Quezadas filed their 2005-2008 tax returns on the dates set out in JPTO Undisputed Fact No. 6. The most recent return in disputer for 2008 return was filed 10/13/10.

10. The deadline for the IRS to assess additional amounts is three years after the return was filed with the IRS. JPTO Agreed Issue of Law No. 2. 26 USC 6501(a).

11. The IRS assessed additional taxes with respect to the Quezadas 2005-2008 tax returns on 2/3/14. JPTO Undisputed Fact No. 11.

12. All of the additional assessments were made more than three years after the Quezadas filed their 1040 tax returns.

13. **The issue** in this adversary is whether the Quezadas 2005-2008 1040 returns qualify as "returns" for the purposes of the IRC. "Return" is not a defined term in the IRC. As will be discussed more fully below, perfection is not required. The taxpayer must make an honest and genuine endeavor to satisfy the law and return must provide sufficient data to calculate the taxpayers tax liability. The Forms 1040 and 1099 filed by the Quezadas satisfy both of these requirements. It is worthy of note that the IRS is not disputing the fact the Quezadas actually paid the amounts disclosed in their Schedules C or Forms 1099 for contract labor. The dispute is whether the filing of Forms 945 would have changed the amount of their tax liability.

14. The IRS contends that the Quezadas 1040 returns for 2005-2008 do not qualify as "returns" because they did not file Forms 945 for those years. Form 945 is the

3

form used to report amounts withheld form payments to third parties. There is no dispute that Mr. Quezada did not withhold taxes from his subcontractors.

15. What is required for a return to constitute a "return" was stated by the Supreme Court in *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180 (1934) as:

Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such [citations omitted] and evinces an honest and genuine endeavor to satisfy the law. This is so even though at the time of filing the omissions or inaccuracies are such as to make amendments necessary.

16. Subsequent case law has expanded the definition of a 'return' to require a fourth element: that the return must provide sufficient data to calculate the taxpayer's tax liability. *Beard v. Commissioner,* 26 T.C. 766, at 777. (1984).

### CASES WHICH HELD THAT A "RETURN" IS NOT A RETURN

17. Many of these cases involve so-called "tax protesters." There are several versions of a basic theme.

18. Returns that disclose only identifying information – names, addresses and social security numbers - are **not** returns. *U.S. v. Moore*, 627 F.2d 830 (7th Cir.1980); *White v. Commissioner*, 72 T.C. 1126 (1979).

19. Returns that disclose only identifying information with the remaining requested information answered with only an assertion of the 5th Amendment privilege against self incrimination are **not** returns. *U.S. v. Edelson*, 604 F.2d 232 (3d Cir.1979).

20. Filed returns in which all of the relevant spaces are filled in with zeros are not returns as "there must also be an honest and reasonable intent to supply the information required by the tax code." In Cabirac v. Commissioner, 120 T.C.163,

4

169 (2003), citing U.S. v. Mosel, 738 F.2d 157 (6th Cir.1984). See, also, U.S. v. Grabinski, 727 F.2d 681, (8th Cir.1984);U.S. v. Rickman, 638 F.2d 182 (10th Cir.1980); U.S. v. Moore, 627 F.2d 830 (7th Cir.1980); U.S. v. Smith, 618 F.2d 280 (5th Cir.1980); U.S. v. Edelson, 604 F.2d 232 (3d Cir.1979).

21. A return which disclosed only income received in the form of gold or silver coin was **not** a return, notwithstanding Article 1, Section 10, of the U.S. Constitution. *Cupp v. Commissioner*, 65 T.C. 68 (1975).

22. Changing the form of the return may make the return a nullity. In *Beard v. Commissioner*, 82 T.C. 766 (1984) the taxpayer listed "wages, salaries, tips, etc" on line 7 in the amount of $24,401.89, but on line 23 under the category of "non-taxable receipts" the taxpayer claimed an "adjustment" of $29,401.89 - exactly $5000 more than his wages – effectively reducing his tax liability to zero. *Beard*, at 770. In addition, the taxpayer made alterations to the form by slightly changing the language of the forms and inserting comments in the margins. *Beard*, at 776. See, also, *Eisner v. Macomber*, 252 U.S. 189 (1920) and *Reiff v. Commissioner*, 1981 WL 11398 (1981).

23. With respect to the altered forms, the *Beard* court stated:

Petitioner's prohibited tampering with the official form, the net effect of which is the creation of a zero tax liability, adversely affects the form's usability by [the IRS]. The tampered form, because of these numerous irregularities, must be handled by special procedures and must be withdrawn from normal processing channels. There can be no doubt that due to its lack of conformity to the official form, it substantially impedes the Commissioner's physical task of handling and verifying tax returns. Under the facts of this case, taxpayer has not made a return according to the forms and regulations prescribed by the Secretary as required by section 6011(a). *Beard*, at 776.

24. In *Badaracco v. Commissioner*, 104 S.Ct. 756 (1984) held that a fraudulent return extends the time for the IRS to assess additional taxes even if the fraud is subsequently "cured" by filing an amended return. In that case the taxpayers conceded that they filed a return that was a "false or fraudulent return with the intent to evade tax." The court stated:

> ` [§6501(c)] identifies three situations in which the Commissioner is allowed an unlimited period within which to assess tax. Subsection (c)(1) relates to a "false or fraudulent return with the intent to evade tax" and provides that the tax may be assessed "at any time." Subsection (c)(3) covers the case of a failure to file a return at all (whether or not due to fraud) and provides that an assessment then may also be made "at any time." Subsection (c)(2) sets froth a similar rule for the case of a "willful attempt in any manner to defeat or evade tax" other than income, estate, and gift taxes. *Badaracco*, at 392.

See, also, *Kartrude v. Commissioner*, 925 F.3d 1379, 1384 (11th Cir.1991).

25. Because the *Badaracco* taxpayers conceded that the initial return was fraudulent, the additional tax could be assessed at ay time. There is nothing in the statute which provides that a subsequent amendment limits the IRS' unlimited extension to assess the additional tax.

26. On a more basic level, in *Bachner v. Commissioner*, 81 F.3d 1274 (3d Cir.1996) the court held that a W-2 filed by the taxpayer's employer did not qualify as a return that would begin the running of limitations. (Note the exception in Subsection 6501(c)(3) infra for failure to file a return at all.) The W-2 also fails to meet the requirement that the return be signed under penalty of perjury. (W-2's are not signed by the taxpayer.) In addition, a W-2 is "not independently sufficient for tax-computation purposes." Although a W-2 is evidence of *one source* of income, there may be other sources, types, or amounts of other income. *Bachner*, at 1280. (Although not mentioned in the opinion, a W-2 also fails to

6

address what deductions may have been available to reduce the taxpayer's tax liability, although minimizing the taxpayer's tax liability is not the responsibility of the IRS.)

## CASES WHICH HAVE HELD THAT A RETURN IS A RETURN

27. In *McCaskill v. Commissioner*, 77 T.C. 689 (1981), the taxpayer filed Form 1040 with Schedules C (profit or loss from business), G (income averaging), and SE (self employment). On Schedule C the taxpayer listed the same amount for gross and net income, but did not itemize any expenses. The taxpayer listed his income as "business income" but did not indicate his occupation or the nature of his business. *McCaskill*, at 691.

28. The IRS contended that the return was invalid as the taxpayer "omitted" his business expenses on Schedule C, to which the court responded:

> Implicitly, however, the deductions were reported to be zero because the petitioners listed the same figure as both gross and net income. Many taxpayers, if they are not claiming a particular kind of deduction, do not insert a zero in the space provided for that deduction but simply leave the space blank. That is what the petitioners did here. We know of no regulation which states that failure to insert a zero or some other figure in each blank will render a Form 1040 a nullity. *McCaskill*, at 697.

29. The court went on to state:

> We agree with respondent that petitioners have failed to indicate the nature and source of their income. Nevertheless, we do not agree that they thereby failed to file a return within the meaning of section 6011. Clearly, the returns as filed contain sufficient information for respondent to make a computation of petitioners' income tax liability. Therefore, the Forms 1040 are valid returns for the purposes of section 6011. [Citations omitted.] *McCaskill*, at 698.

30. *Blount v. Commissioner*, 86 T.C. 383 (1986) involved a taxpayer who filed a Form 1040 but did not attach a Form W-2. The IRS returned the tax return for

7

resubmission with the W-2 attached. The taxpayer resubmitted the return with the W-2 attached. The IRS subsequently sent a notice of deficiency more than three years after the filing of the original return. The IRS took the position that the original return was a nullity because it was "incomplete." The court stated:

> The document which petitioners filed on June 15, 1981 was an unaltered Form 1040 that set forth the items of gross income, deductions, and credits from which petitioners' 1980 tax liability could be calculated. *Bloumt*, at 387.

31. The court went on to state:

> The omission of a Form W-2 does not prevent the calculation of tax liability. Even if the return is considered incomplete solely due to the omission of a Form W-2, the subsequent resubmission of the return with a Form W-2 operate to supply the omitted information or correct inaccurate information. *Blount*, at 387.

32. In *Steines v. Commissioner*, T.C. Memo. 1991-588 (1991), the debtor filed a complete 1040 with attached schedules, including a Schedule C which included a business expense for legal and professional services in the amount of $111,111,111,111. (That is not a typo – the deduction was for $111 billion dollars.) The result was that the taxpayer owed no federal income tax. The IRS contended that because of that deduction, the IRS was unable to calculate his tax liability and the return was a nullity. The Tax Court disagreed, stating:

> While petitioner's return contained preposterous and frivolous items that common sense dictated must be disregarded, and while his return also omitted three small items of income, the proper recourse for those derelictions of the taxpayer's duty is the negligence addition which the Court has sustained above, rather than treating petitioner's Form 1040 as a legal nullity amounting to failure to file a return. Accordingly we hold for petitioner on the delinquency addition under section 6651(a)(1). *Steines*, at page 5.

33. Notwithstanding the taxpayer's "preposterous and frivolous" deduction, the 1040 was apparently substantially complete and the court concluded that the IRS would

8

have been able to determine the taxpayer's actual tax liability by the simple expedient of disregarding the $111 billion deduction.

34. In *Colsen v. U.S.*, 446 F.3d 836 (8th Cir.2006), the taxpayer did not file his tax returns until after the IRS had prepared substitutes for return for each of the relevant years. Colsen was a dischargeability adversary in a Chapter 7 case where the IRS contended that the returns did not qualify as returns as they served no purpose and could not be an honest and genuine endeavor to satisfy the tax laws.

The court disagreed stating:

But we have no evidence to suggest that the the forms appeared obviously inaccurate or fabricated; indeed, Mr. Colsen's 1040 forms contained data that allowed the IRS to calculate his tax obligation more accurately: The information contained in the forms was honest and genuine enough to result in thousands of dollars of abatements of tax and interest. This contrasts, incidentally, with the situation in *Hindenlang*, 164 F.3d at 1031, where the taxpayer's forms contained essentially the same information as the substitute forms that the IRS prepared and the calculation of tax did not change substantially. *Colsen*, at 840.

35. *Hulett v. Commissioner*, 150 T.C. 4 (2018) is the most recent pronouncement from the US tax court on what constitutes a return. In *Hulett*, the taxpayers filed returns with the Virgin Islands Bureau of Internal Revenue (VIBIR) but did not file returns with the U.S. IRS because of favorable tax treatment of taxpayers who establish businesses in the U.SV.I. If the taxpayers had files U.S. returns, the forms would have been filled in with all zeros. The IRS requested copies of the taxpayers returns from the VIBIR which sent copies of the Form 1040, but none of the attached schedules. The IRS subsequently sought to assess taxes against the taxpayer asserting failure to comply with the *Beard* test.

36. Applying the *Beard* test, the court stated:

9

"A return without a required attachment may nonetheless be processible when the information contained on that missing attachment is readily available elsewhere in the return or when the information is irrelevant to mathematical verification." Quoting *Deutsche Bank AG v. U.S.*, 742 F.3d 1378 (Fed.Cir.2014). *Hulett,* at page 14.

37. The *Hulett* court went on to state:

"While a return may lack supporting schedules for particular items of gross income, deduction, and credits, it will generally provide sufficient data to calculate a tax liability. The fact that the tax liability computed on the original return is later determined to be incorrect does not necessarily cause the return to fail the substantial compliance standard." Quoting *Blount*, infra,. *Hulett*, at page 15.

### APPLYING THE LAW TO THE FACTS OF THIS CASE

38. The facts of this case are fairly straightforward:

   * The Quezadas filed Forms 1040 for each of the four years in dispute.

   * Attached to those tax returns were Schedules C which provided a detailed list of business expenses including amounts paid to non-employee subcontractors.

   * The Quezadas also filed Forms 1099 for each of their subcontractors during the years in dispute. Although most of those Forms 1099 did not contain TINs or SSNs that omission did not affect the IRS's ability to calculate the *Quezadas*' tax liability.

   * The Quezadas did not file Forms 945 for any of the years in dispute because they were not required to do so. Form 945 is titled "Annual Return of Withheld Federal Income Tax."

   * The Quezadas did not withhold federal income tax during any of the years in dispute so if they had filed Forms 945 the amount reported would have been zero.

39. The only issue in dispute in this adversary is whether the filed returns qualified as returns for the purposes of the *Beard* test. The fourth element of the *Beard* test is that the return must provide sufficient information to calculate the taxpayer's tax liability.

40. If the Plaintiffs had filed Forms 945, those forms would have reported zero dollars withheld and would have supplied no information relevant to calculation of their tax liability. The IRS does not contend that that the filed Forms 1040 or Schedules C were fraudulent or even incorrect.

    Respectfully submitted,

LAW OFFICE OF MICHAEL BAUMER
7600 Burnet Road, Suite 530
Austin, TX 78757
512-476-8707; Fax 512-476-8604
baumerlaw@baumerlaw.com

By:/s/Michael Baumer
Michael Baumer -01931920
Megan Baumer-01931915

### CERTIFICATE OF SERVICE

I, the above signed, do hereby certify that a true and correct copy of the foregoing document was served via electronic notice to the following registered CMECF user through the Bankruptcy Court noticing system:

Thomas M. Herrin
Attorney Tax
Division Department
of Justice 717
Harwood, Suite 400
Dallas, TX 75201
thomas.m.herrin@usdoj.gov