

**Dated: August 31, 2018.**

**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

___

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 16-10467-TMD |
| JAMES QUEZADA | § | |
| SIMONA QUEZADA, | § | |
|    Debtors. | § | Chapter 11 |

| | | |
|---|---|---|
| JAMES QUEZADA | § | |
| SIMONA QUEZADA, | § | |
|    Plaintiffs, | § | |
| | § | Adv. Proc. No. 16-01101-TMD |
| v. | § | |
| | § | |
| INTERNAL REVENUE SERVICE, | § | |
|    Defendant. | § | |

## MEMORANDUM OPINION

### I. BACKGROUND

James Quezada[1] works as a bricklayer and operates as Quezada Masonry.[2] Quezada builds masonry projects for general contractors.[3] Typically, Quezada supplies the materials and

---

[1] It is unclear from the current record how involved Simona Quezada was in the business. For ease of reference, the Quezadas will be referred to in the singular except when discussing their joint filings in their bankruptcy case and this adversary proceeding.

[2] Mot. Summ. J. 3, ECF No. 12.

[3] Mot. Summ. J. 3, ECF No. 12; IRS Resp. 2, ECF No. 15.

1

hires contract laborers and subcontractors to perform the labor.[4] From 2005-2008, Quezada filed tax returns, which included Form 1099-Misc., where he reported payments made to subcontractors.[5] Quezada also claimed deductions for these payments on his Form 1040 "Individual Income Tax Return" for each of these years.[6] Although the IRS challenges only tax years 2005-2008, Quezada says he made similar filings, claiming similar deductions, for several years both before 2005 and after 2008.[7]

In September 2006, the IRS sent a notice to Quezada that his 2005 Form 1099 had missing or incorrect TINs.[8] The notice also informed Quezada that if he had missing or incorrect TINs, he had to start backup withholding.[9] But the notice also told Quezada that if his records had the correct TINs and he simply submitted the wrong information on Form 1099, he did not have to do anything.[10] The IRS sent the same notice out in 2007 and twice in 2009 about Quezada's later Forms 1099.[11]

In September 2008, the IRS began to examine Quezada's 2005 backup withholding liability for the subcontractors.[12] Three years later, it began to examine Quezada's withholding liability for 2006-2008.[13] Over two years after that, in December 2013, the IRS Appeals Officer reported the results of these examinations in an Appeals Transmittal and Case Memo. In this memo, he recommended that the IRS assess[14] over $600,000, together with almost $300,000 of related penalties, because Quezada did not file Form 945 to report backup withholding or pay

---

[4] Mot. Summ. J. 3, ECF No. 12; IRS Resp. 2, ECF No. 15.
[5] Mot. Summ. J. 3, ECF No. 12; IRS Resp. 2-3, ECF No. 15.
[6] Mot. Summ. J., Ex. P at 3-4, ECF No. 12-17.
[7] Mot. Summ. J. 3, ECF No. 12.
[8] IRS Ex. 9.
[9] IRS Ex. 9.
[10] IRS Ex. 9.
[11] IRS Exs. 10-12.
[12] Mot. Summ. J., Ex. E at 4, ECF No. 12-6.
[13] Id.
[14] An "assessment" is an IRS determination of tax liability. Internal Revenue Manual, Part 35.

backup withholding taxes in 2005-2008.[15] In February 2014—more than three years after Quezada filed his Forms 1040 and 1099—the IRS assessed his tax liability for 2005-2008.[16] A year later, in March 2015, the IRS sent Quezada a Notice of Determination, concluding that Quezada owed over $1.2 million, including interest and late payment penalties.[17]

About a year later, the Quezadas filed under chapter 11 of the Bankruptcy Code.[18] Soon after, the IRS filed a $1,269,561 proof of claim.[19] In response, the Quezadas filed this adversary proceeding to determine the debt's dischargeability under section 523(a)(1),[20] and for declaratory relief from the taxes listed in the IRS proof of claim under section 505(a)(1).[21]

## II. ANALYSIS

Quezada argues that by the time the IRS assessed his taxes, the 3-year statute of limitations had run, so the IRS is barred from collecting on the alleged deficiency.[22] Under the Internal Revenue Code, the IRS must assess a tax within 3 years after the return relating to that tax is filed, even if the return is filed late.[23] One exception to the general rule is that if no return is filed, there is no limit on when the IRS must assess a tax.

The parties agree that the burden of proof for the defense lies on Quezada.[24] Quezada argues that his Forms 1040 and 1099 are "returns" that, once filed, triggered the 3-year

---

[15] Mot. Summ. J., Ex. O at 1, ECF No. 12-16.
[16] Mot. Summ. J., Ex. E at 5, ECF No. 12-6.
[17] Mot. Summ. J., Ex. P at 3, ECF No. 12-17.
[18] *In re Quezada*, 16-10467 (filed Apr. 21, 2016).
[19] Mot. Summ. J., Ex. F at 2, ECF No. 12-8.
[20] Bankruptcy Code section 523(a)(1) excepts from the discharge taxes for which a return was not filed.
[21] Compl., ECF No. 1.
[22] Quezada made other arguments as well, but at trial counsel clarified that this was the only defense he was relying on. Trial Transcript 4:21-7:5, ECF No. 58. *See also* Pls.' Trial Br. 3, ECF No. 57.
[23] 26 U.S.C. § 6501(c)(3).
[24] Joint Pre-Trial Order 32, ECF No. 40.

limitation.[25] The IRS counters that Quezada had to file Forms 945, and because the Forms 945 were never filed the statute of limitations has not begun to run.[26]

### A. Quezada needed to file Forms 945.

Quezada claimed deductions for subcontractor expenses on his income taxes.[27] To claim these deductions, Quezada needed to file Schedule C and Form 1099—both of which he attached to each of his Forms 1040.[28] Though business owners generally do not have to withhold or pay taxes on payments to independent contractors,[29] there are some circumstances, specified in the statute, under which they must conduct backup withholding. Specifically, when a business owner pays an independent contractor, if the independent contractor fails to give his TIN to the business owner, or if the [IRS] notifies the business owner that the TIN furnished by the independent contractor is incorrect, then the business owner must deduct backup withholding from the independent contractor's paycheck and pay it to the IRS with Form 945.[30]

Quezada filed Forms 1099 for tax years 2005 through 2008 that were missing subcontractor TINs.[31] For each tax year in question, the IRS sent notices to Quezada that his Forms 1099 were missing TINs and informed him of the 28% backup withholding requirement.[32]

Quezada argues that he did not have to file Form 945 because he had all his subcontractor TINs in his records, but made a mistake by omitting the information on his Forms 1099.[33] To support this, Quezada testified that he collected the TINs from all his subcontractors.[34] He said

---

[25] Pls.' Trial Br. 3, ECF No. 57.
[26] United State of America's Post-Trial Br. 14, ECF No. 60.
[27] Joint Pre-Trial Order 7, ECF No. 40.
[28] *Id.* at 7-8.
[29] *Id.* at 8.
[30] 26 U.S.C. § 3406(a)(1), 26 C.F.R. § 31.6011(a)-4.
[31] *See* IRS Exs. 9-12.
[32] IRS Exs. 9-12.
[33] Trial Transcript 13:8-16, ECF No. 58.
[34] *Id.* at 12:22-23.

that he kept all of them in a notebook and a ledger.[35] But Quezada was unable to provide those records or other documents showing that he had the TINs when he filed the 1099 forms. Further, Quezada signed a sworn statement that he "did not obtain Social Security numbers (SSN) or Taxpayer Identification numbers (TIN) from all of [his] subcontractors."[36] In this statement, Quezada also says he was trying to collect all the SSNs and TINs, which confirms that Quezada's records were incomplete and he should have begun backup withholding as directed in the notices and as required by statute. Because backup withholding was required, Quezada was also required to file Forms 945.

### B. The IRS is not barred by the statute of limitations.

Because Quezada was required, but failed, to conduct backup withholding and file Forms 945, the statute of limitations has not begun to run.[37] In *Commissioner v. Lane-Wells*,[38] the taxpayer had filed corporation tax returns on Form 1120 but did not file Form 1120H, the return required for personal holding companies, because it believed that it was unnecessary.[39] The Supreme Court held that because the taxpayer was subject to two liabilities, and thus required to file two separate returns, the statute of limitations did not begin to run with the filing of Form 1120.[40]

Quezada argues that the fact that he did not conduct backup withholding was evident from his Form 1099, so the IRS could have assessed liability based on them.[41] And Quezada points out that all the information needed to assess the amount of backup withholding is in his

---

[35] *Id.* at 13:22-14:5.
[36] Pl.'s Ex. 41 at 3.
[37] 26 U.S.C. § 6501(a).
[38] *Commissioner of Internal Revenue v. Lane-Wells Co. et al.*, 321 U.S. 219 (1944).
[39] *Id.* at 220.
[40] *Id.* at 222-24.
[41] Quezada cites *Hulett v. Commissioner*, where the tax court found that the first two pages of the tax payer's form 1040 was enough to calculate liability. *Hulett v. Commissioner*, 150 T.C. 4, 14 (2018).

5

Form 1040, and so the Form 1040 should count as a return under *Beard v. Commissioner*.[42] But this very argument was made and rejected in *Lane-Wells*. In *Lane-Wells,* the lower court found that the Form 1120 "showed all the facts necessary for the respondent to compute the taxes as a personal holding company obligation."[43] So the Court "assumed" that the information contained in the filed Form 1120 was the same as that called for by the Form 1120H but stated that "the Treasury was fully within the statute in requiring that information in a separate return."[44] The Court distinguished the *Germantown Trust* case, in which a return on the wrong form was treated as the "return" for purpose of the limitation statute, because *Germantown* involved only one liability—income tax.[45] Unlike *Germantown, Lane-Wells* involved two different tax liabilities and two different returns.

So too here. Quezada also faced two liabilities—income taxes and backup withholding— and needed to file two returns, Forms 1040 and 945. The statute requires business owners to collect their subcontractors' TINs and report them on Forms 1099 so the IRS can verify that the subcontractors were paying the correct amount in income taxes.[46] Without the TINs, the IRS cannot tell whether the subcontractors are paying their taxes, so the statute requires the employer to deduct backup withholding and report that backup withholding on Form 945.[47] Put another way, Quezada claimed deductions for the amounts he paid his subcontractors. To see whether he properly claimed those deductions, the IRS had to confirm that the subcontractors paid income

---

[42] Pls.' Trial Br. 10, ECF No. 57.
[43] *Lane-Wells*, 321 U.S. at 223.
[44] *Id.* at 223.
[45] So too in the Hulett case cited by Quezada. Hulett perhaps involved two liabilities – VI and US income taxes. But only one *type* of tax.
[46] 26 U.S.C. § 3406. *See also* Trial Transcript 6:23-25, ECF No. 58.
[47] 26 U.S.C. § 3406, 26 C.F.R. § 31.6011(a)-4. *See also* Trial Transcript 6:23-7:3, ECF No. 58; Joint Pre-Trial Order 13, ECF No. 40.

6

on the amounts claimed as deductions by Quezada—and this could not be done without the TINs.

### C. Even under *Beard*, the IRS would not be barred.

Quezada argues that the proper analysis is the one announced by the tax court in *Beard v. Commissioner*.[48] Specifically, Quezada argues that under *Beard*, the Forms 1040 and 1099 he filed are returns sufficient to trigger the section 6501 statute of limitations. The court in *Beard* analyzed Supreme Court cases to distill a "test to determine whether a document is sufficient for statute of limitations purposes."[49] The elements are

> First, there must be sufficient data to calculate tax liability; second, the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute the return under penalties of perjury.[50]

But all the cases Quezada cited that use the *Beard* analysis involve only one liability, which, as explained above, is not so here. Because there is more than one liability here, *Lane-Wells* controls. Yet the same result would be reached applying a *Beard* analysis.

#### a. Sufficient data to calculate tax liability.

Quezada argues that missing TINs are "not relevant to his tax liability."[51] But that's incorrect. Whether Quezada properly claimed deductions depends on whether the subcontractors paid taxes on the income Quezeda shielded by claiming those deductions. So to determine whether Quezada properly claimed his deductions, the IRS needs to have the subcontractors' TINs to verify how much they paid in income taxes. The IRS informed Quezada that backup

---

[48] *Beard v. Commissioner*, 82 T.C. 766 (1984), aff'd 793 F.2d 139 (6th Cir. 1986).
[49] *Id.* at 777 (1984).
[50] *Id.*
[51] Trial Transcript 6:16-21, ECF No. 58.

7

withholding is required if he did not have the correct TINs in his records.[52] The way the IRS could find out if Quezada conducted backup withholding would be through Form 945. In other words, to give the IRS sufficient data to calculate tax liability, it needed either the TINs on Form 1099 or withholding reported on Form 945. Except for TINs of some subcontractors, Quezada provided neither.

Quezada points out that the IRS had sufficient data to calculate tax liability because it calculated it when it assessed taxes and filed its claim in Quezada's bankruptcy case. This argument is sophistry. The IRS could assess a supposed liability based on the missing TINs and the lack of any backup withholding. But to accurately calculate the liability, the IRS had to know if the contractors paid taxes on the income they earned working for Quezeda, and this the IRS could not do without the TINs.

### b. Document must purport to be a return.

It is uncontested that the Forms l040 and 1099, relied on by Quezeda, purport to be returns. This element is satisfied.

### c. Honest and reasonable attempt to satisfy the requirements of tax law.

The Supreme Court in *Zellerbach v. Helvering* explained that "an honest and genuine endeavor to satisfy the law" excuses a return that does not have "perfect accuracy or completeness."[53] The court in a later opinion found returns that "appeared on their faces to constitute endeavors to satisfy the law" to be returns that triggered the statute of limitations.[54]

Quezada's Forms 1099 had missing TINs four years in a row.[55] The TINs were not

---

[52] IRS Exs. 9, 10, 11, 12.
[53] *Zellerbach Paper Co. v. Helvering,* 298 U.S. 172, 180 (1934).
[54] *Badaracco v. Commissioner*, 464 U.S. 384, 397 (1984).
[55] IRS Exs. 9, 10, 11, 12.

8

provided despite IRS notices about the deficiency.[56] And simply comparing 2005 and 2006, the TINs are missing for the same people.[57] Though the Supreme Court has held that a return need not be perfect, the TINs are a crucial piece of information. Quezada's repeated failure to provide the information, despite many notices from the IRS, shows that he did not honestly or reasonably seek to satisfy the law. Thus, Quezada also fails to meet this element.

### d. Taxpayer must execute the return under penalties of perjury.

Original Forms 1099 were not offered into evidence, so the Court cannot determine whether those forms were executed under penalties of perjury. But Forms 1040 were admitted into evidence and appear to satisfy this element.[58]

## III. CONCLUSION

The Debtor thus fails to prove at least two of the elements under the *Beard* analysis, and also fails under the *Lane-Wells* analysis. So the statute of limitations was not triggered by his filing of Forms 1040 and Forms 1099, and the taxes assessed by the Commissioner in the amount of $1,269,561.89 are valid, allowed, and non-dischargeable.

---

[56] IRS Exs. 9, 10, 11, 12.
[57] *Compare* IRS Ex. 9 *and* IRS Ex. 10. Original Forms 1099 were not offered into evidence.
[58] Debtors' Exs. 16, 17, 18, 19.